IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD R. PEVIA,                   *

Plaintiff                                *

v.                                          *           Civil Action No. ELH-17-2796

COMMISSIONER OF CORRECTIONS, *et al*. *

Defendants                   *
                                               ***

## MEMORANDUM OPINION

The self-represented plaintiff, Donald R. Pevia, is an inmate currently confined at the North Branch Correctional Institution ("NBCI"). He filed a civil rights Complaint, with exhibits, pursuant to 42 U.S.C. § 1983. ECF 1. Pevia alleges that his rights under the Eighth and Fourteenth Amendments were violated when additional sanctions were imposed by the Reduction in Violence ("RIV") Committee after he pleaded guilty to inmate rule violations. *Id.* at 3. Pevia, a frequent litigator in this Court, named as defendants the "Commissioner of Corrections" (ECF 8); the Executive Director of the Department of Public Safety and Correctional Services ("DPSCS"); and Jeffrey Nines, Assistant Warden. ECF 1 at 3.

Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 8.[1] The motion is supported by a memorandum (ECF 8-1) (collectively, the "Motion") and exhibits. Plaintiff opposes the Motion. ECF 12; ECF 18.[2]

---

[1] Citations are to the court's electronic docket.

[2] ECF 18 is docketed as a "Motion to Supplement and Correct the Record." The motion shall be granted.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted.

## I. Background

### A. Plaintiff's factual assertions

Plaintiff alleges that on January 12, 2017, he entered a plea of guilty to a rule infraction charging possession of a weapon, in exchange for 60 days of segregation. ECF 1 at 3. A few days later, Pevia was charged with another rule violation for possession of a weapon. *Id*. On January 26, 2017, he pleaded guilty to the additional charge and received 125 days of segregation, concurrent with the original 60 days previously imposed. *Id*.

In February 2017, plaintiff was served with notice that the RIV Committee added to the original 60-day term of segregation an additional sanction of 30 days of cell restriction. *Id*. According to plaintiff, the cell restriction began on February 23, 2017. *Id.*

Plaintiff received another notice from the RIV Committee on March 7, 2017, advising that an additional hearing was held on February 7, 2017, regarding the second weapons charge. *Id*. The RIV Committee imposed 60 days of cell restriction, "on top of the original thirty (30) day cell restriction . . . ." *Id.* Thus, plaintiff asserts that he received a total of 90 days of cell restriction. *Id.*[3]

Plaintiff indicates that, as a result of the cell restriction imposed by the RIV Committee, he had only one hour of recreation per week during the period in issue. ECF 1 at 3-4. He argues that his right to Due Process was violated by the sanctions imposed by the RIV Committee after he was already sanctioned through the disciplinary proceedings process. ECF 1 at 6. He also

---

[3] Pevia did not serve 90 days of cell restriction. He overlooks that the second cell restriction was imposed concurrent with the first, and much of the time overlapped.

argues that his right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment, was violated by the limitation of one hour of out-of-cell exercise per week during the cell restriction. *Id.* He seeks monetary damages.

    **B.    Defendants' factual assertions**

Defendants' version of the facts does not differ materially from plaintiff's version of events. They have, however, amplified the facts.

**1.**

John White, Correctional Case Management Specialist II at NBCI, indicates in his Declaration (ECF 8-2 at 1-2) that the role of the RIV Committee is to implement policies to reduce incidents of inmate violence. *Id.* at 1, ¶ 5. The RIV Committee is permitted to impose alternative disciplinary sanctions independent of or in conjunction with an adjustment history sentencing matrix sanction. *Id.* at 1, ¶ 4; ECF 8-2 at 31; Code of Maryland Regulations ("COMAR") § 12.02.27.39.

White explains that cell restrictions imposed by the RIV Committee are alternative disciplinary sanctions permitted under COMAR. ECF 8-2 at 1, ¶ 5. Further, he explains: "Cell restriction confines an inmate to a designated location and prohibits the inmate from participation in privileges and activities including recreation activities such as out of cell exercise." *Id.* at 2, ¶ 6; COMAR §12.02.27.39E(1).[4] Cell restriction imposed as an alternative sanction may not exceed 60 days. *Id.* at 32; COMAR §12.02.27.39D(5).

COMAR 12.02.27.39A provides that alternative disciplinary sanctions "are separate and distinct from the sanctions plotted in the adjustment history sentencing matrix." Moreover,

---

[4] Under COMAR § 12.02.27.39E(2), cell restriction does not prohibit the inmate from participating in, *inter alia*, work, school, meals, religious services, medical appointments, and visitation.

3

under COMAR 12.02.27.39B, "[a]n alternative disciplinary sanction may be imposed independently of or in conjunction with: (1) Another alternative disciplinary sanction; or (2) An adjustment history sentencing matrix sanction."

The parties appear to agree that plaintiff actually served 73 days of cell restriction. ECF 12 at 6; ECF 8-2 at 27.

**2.**

During a search of plaintiff's cell on January 12, 2017, a homemade weapon described as a six-inch piece of plastic, sharpened to a point at one side, was discovered taped under a sink or a toilet. ECF 8-2 (Inmate Rule Violation Records) at 3, 6, 7.[5] Plaintiff admitted ownership of the weapon and signed a statement to that effect. *Id*. at 3, 6.[6] He was issued an Inmate Rule Violation under Rule 105, charging him with "possess, use or manufacture a weapon." *Id*. at 3.

A hearing was scheduled for January 24, 2017. *Id*. at 9. At that time, plaintiff voluntarily agreed to waive a formal hearing and to plead guilty to the charge. *Id*. at 10. Plaintiff and the facility representative agreed to a sanction of 60 days of disciplinary segregation, the revocation of 60 days of good conduct credit, and the indefinite suspension of visitation. *Id*. at 10-11.

The RIV Committee reviewed plaintiff's hearing of January 24, 2017. On February 22, 2017, the RIV Committee imposed 30 days of cell restriction as an additional sanction, effective February 23, 2017. ECF 8-2 (DPSCS Administrative Action) at 14-16.

On January 26, 2017, two days after the hearing for the first weapons charge, plaintiff was observed in the recreation cage acting suspiciously. ECF 8-2 at 18. He was escorted from the cage by an officer to a secure area. There, plaintiff surrendered two homemade weapons

---

[5] The record, cited above, references both a sink and a toilet. The location of the weapon is not material to the issues.

[6] Photographs of the weapon appear at ECF 8-2 at 7.

made from a meal tray, which he had hidden in his shoe. *Id*.[7] The remainder of the tray was found in plaintiff's cell. *Id*. Pevia was charged and a hearing was scheduled for February 7, 2017. *Id*. at 22. However, plaintiff elected to plead guilty to a violation of Rules 105, 116, 406, and 408. ECF 8-2 at 23. Thus, Pevia waived his right to a formal hearing. *Id*. Pursuant to a plea agreement, plaintiff received 125 days of disciplinary segregation, the revocation of 120 days of good conduct credit, and the indefinite loss of visitation. *Id*. at 23-24. Pevia was also advised that the Warden would review the decision and could modify the sanctions imposed. *Id*. at 24.

Upon reviewing the second weapons charge on March 7, 2017, the RIV Committee imposed 60 days of cell restriction, to be served concurrent to the sanction previously imposed by the RIV Committee. ECF 8-2 at 27. The 60-day cell restriction had a "Start Date" of March 8, 2017. *Id.*

In the meantime, on February 24, 2017, plaintiff filed administrative remedy request ("ARP") NBCI-0437-17 as to the first weapons charge.[8] He complained that on that day he received notice of the 30 days of cell restriction, in addition to his original sentence of 60 days of disciplinary segregation. ECF 8-2 at 33. Plaintiff argued that once the disciplinary hearing was final, no additional penalty could be added. In his view, the addition of the cell restriction violated his right to due process and his rights under the Eighth Amendment , because he was only permitted one hour of out-of-cell recreation per week. *Id*. at 33-34.

On March 8, 2017, Assistant Warden Nines dismissed the ARP. He said, in part, ECF 8-2 at 33:

---

[7] A photograph of the weapons appears at ECF 8-2 at 20.

[8] As of that date (February 24, 2017), Pevia had not yet received the decision of the RIV Committee as to the second weapons offense.

5

> An investigation has revealed that the RIV Committee is assigned to implement proactive initiatives, policies and procedures to reduce incidents of inmate violence, including violence towards staff and inmates. Cell restriction is a tool meant to curtail the future behaviors such as those that involve acts of violence from the inmate populations. You were indeed properly recommended for cell restriction by the RIV Committee. The Warden approved this measure as a means to curtail future violent acts. Please be mindful that this scenario could easily be avoided by maintaining a positive institutional adjustment. It is advised that you talk to your Housing Unit Manger/Lieutenant about any additional questions regarding this matter. Your administrative remedy allegations are without merit.

Pevia filed an appeal to the Commissioner on March 28, 2017, arguing that he was not found guilty of a violent act and as such the RIV program did not apply to him. *Id*. at 35-36. He also argued that he had been "forced to serve 90 days on cell restriction . . . ." *Id*. at 35. The appeal was dismissed, based on a finding by the Commissioner that the RIV Committee followed proper policy and procedures. *Id*. at 37.[9]

Nines avers in his Declaration (ECF 8-3) that he was the Assistant Warden at NBCI during the period relevant to plaintiff's claims. *Id.* at ¶ 1. He states that he expects NBCI staff to comply with the Directives and policies regarding inmate rule violations and general inmate housing at NBCI. *Id*., ¶ 3. Further, he asserts that in responding to an inmate's rule violation appeal, he relies on the reports and assessment of staff in order to render a decision on the appeal. *Id*. ¶ 4.

## II. Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md.

---

[9] Defendants do not argue failure to exhaust as to the second weapns violation, although there is no indication that an ARP was filed as to it. It appears, however, that the appeal encompassed both weapons charges, given the reference to the 90-day cell restriction.

6

2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). But, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x. 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[10]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of

---

[10] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp*., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, *supra*, 672 Fed. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

7

extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F.Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F.Supp. 2d 414, 420 (D. Md. 2006).

8

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff previously sought and was denied discovery. ECF 13, 14, 15, 16 & 17. I found that plaintiff failed to explain with specificity what materials he sought or how the additional materials were necessary to his opposition to the dispositive motion. ECF 17 at 4. I am satisfied that it is appropriate to address defendant's motion as one for summary judgment, because it will facilitate resolution of this case.

9

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in

the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

#### A. Personal participation

Section 1983 provides for liability as to "[e]very person who, under color of [state law], *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983

11

(emphasis added). "Although § 1983 must be read against the background of tort liability that makes a [person] responsible for the natural consequences of his actions, liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citation, alteration, and internal quotation marks omitted). Therefore, the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).

Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). In order to establish supervisory liability under § 1983, the plaintiff must first allege and ultimately show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

This standard requires more than a simple allegation that a defendant held a position that ostensibly imposed a duty upon him to insure his subordinates did not engage in misconduct. It does not appear that any of the three named defendants were responsible for imposing the cell restrictions on plaintiff. Nor were they responsible for tracking the expiration of the cell

restriction. As to Nines, the uncontroverted evidence is that he simply investigated plaintiff's complaints.

Where, as here, there is absolutely no allegation or any evidence with respect to the defendants, they are entitled to judgment as a matter of law. A decision by correctional personnel considering inmate complaints, without more, does not establish personal participation in the alleged constitutional violation. *See Atkins v. Maryland Div. of Correction*, 2015 WL 5124103 at *6 (D. Md. 2015) (act of denying grievances); *Scott v. Padula*, 2010 WL 2640308, *3 (D. S.C. 2010) (failure to investigate or process a grievance); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983"). Therefore, the named defendants are entitled to summary judgment as a matter of law.

## B. Cell restriction

Even if this Court considers the merits, Pevia fares no better.

Prisoners retain rights under the Due Process Clause. But, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)).

In prison disciplinary proceedings, where an inmate faces the possible loss of diminution credits, the prisoner is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns; (4) the opportunity to have non-attorney representation when the inmate is

illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U. S. at 564-66, 592.

The hearing officer's decision must contain a written statement of the evidence relied upon to satisfy due process. *See Baxter v. Palmigiano*, 425 U.s. 308, 322, n. 5 (1976), *Wolff*, 418 U.S. at 564. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Here, plaintiff received all the process he was due. He was given timely advance written notice of both infractions and was permitted to attend both disciplinary hearings. He waived his opportunity to be heard in both cases when he pleaded guilty. He received written findings of the hearing officer. Moreover, the hearing officer's determination of guilt, in both instances, was based upon some evidence, *i.e.*, review of plaintiff's plea and the record evidence.

Contrary to plaintiff's assertions, the addition of a term of cell restriction imposed by the RIV Committee did not violate his right to due process. There is no additional procedural due process requirement on sentences imposed after a guilty finding or a review and alteration of a sentence imposed after a guilty finding. *See Wolf,* 418 U.S. at 563; *Madison v. Parker,* 104 F. 33 765, 768 (5th Cir. 1997)(holding cell restrictions are "merely changes in the conditions of [] confinement and do not implicate due process concerns.") Simply stated, plaintiff was not entitled to additional procedural protections in order for the RIV Committee to review the adjustment proceedings and impose additional sanctions. The RIV Committee did not revoke additional good conduct credits and thus did not lengthen the amount of time plaintiff must serve.

To the extent that plaintiff's Complaint is construed as asserting that the RIV Committee's imposition of cell restrictions imposed an atypical or significant hardship in relation

to the ordinary incidents of prison life, his claim likewise fails. Prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Wolff v. McDonnell*, 418 U.S. 539); *Wilkinson v. Austin*, 545 U.S. 209, 210 (2005). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is "necessarily" a "fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502-03 (4th Cir. 1997) (quoting *Sandin*, 515 U.S. at 483-84); *accord Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . requires case by case, fact by fact consideration." (alteration in original) (internal quotation marks omitted)). "*Wilkinson* does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to due process protection." *Prieto v Clarke*, 780 F.3d 245, 250 (4th Cir. 2015). Rather, there must exist an interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations *combined with* . . . . harsh and atypical conditions" for due process protections to apply. *Id.* (emphasis in original) (citing *Wilkinson*, 545 U.S. at 224-25).

"[G]eneral population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015). Where, as in *Bevarati*, 120 F.3d 500, conditions in segregated confinement are "similar in most respects to those experienced by inmates in the general population," no liberty interest exists in avoiding that segregation assignment. *Id.* at 503.

15

Lengthy periods of segregation, with more restrictive conditions than what has been described by plaintiff, have been found insufficient to trigger due process. *Id.* at 504 (stating that "although the conditions [described] were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life.").

Here, the decision by the RIV Committee to place plaintiff on cell restriction for 60 days was within the exercise of the committee's discretion and was undertaken in an effort to manage the security of the prison. The decision did not impose an atypical and significant hardship on plaintiff. *See Lomax v. Shearin*, 2011 WL 1792067 at *3-4 (2011), *aff'd* 468 F. App'x 340 (4th Cir. 2012) (holding imposition of additional 60 days of cell restriction by the RIV after sanctions imposed via disciplinary proceedings did not constitute an atypical hardship). Nor did this constitute a breach of any plea agreement. Pevia received the sanction to which the institutional representative agreed. The RIV Committee is a separate matter, with the right to alter sanctions.

Plaintiff amplifies his Eighth Amendment conditions claim in his response in opposition to the dispositive motion. He argues that being confined for 73 days to his cell, which was originally designed to be a single cell but which now houses two inmates, and with only one hour of recreation per week, constitutes cruel and unusual punishment. ECF 12 at 6.

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* A prisoner must prove two elements to establish that particular conduct by prison officials constitutes cruel and unusual punishment: (1) "the deprivation of [a] basic human need was *objectively* 'sufficiently serious,'"

and (2) "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (emphasis in original) (citation omitted).

Significantly, in neither the Complaint nor in his opposition does plaintiff allege that he suffered any injury as a result of being on cell restriction for 73 days. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Plaintiff has failed to come forward with any evidence that his assignment to cell restriction for 73 days resulted in any actual injury to him. Therefore, defendants are entitled to summary judgment.[11]

A separate Order follows.

August 23, 2018                             /s/
Date                                    Ellen L. Hollander
                                          United States District Judge

---

[11] In view of my disposition, I need not reach defendants' qualified immunity argument. *See* ECF 8-1 at 10-11.